First case is Sutton v. Stony Brook University Good morning, may it please the court, Stephen Bergstein for the plaintiff appellant. This court should reinstate the complaint on plaintiff's behalf. She asserts cognizable claims under Rule 12 for quid pro quo harassment, Title IX First due process. Let me start with quid pro quo. The complaint asserts that the plaintiff's supervisor, Mangano, took repeated actions that would suggest an unusual interest in the plaintiff on the basis of her gender. They are detailed in the complaint, suggesting he had some kind of romantic interest in the plaintiff. And at some point, he told her after praising one of her lessons, he said, I've had enough of your behavior, you're not responding to my repeated texts, you can be taken out of student teaching if I recommend that to Galante, who was the other supervisor. So that states a claim for quid pro quo because she had resisted and objected to his advances. Well, what are the plausible objections that any of this had to do with sex? Well, he persisted in having one-on-one meetings. He met with her in poorly lit rooms. He made a sexual gesture, that's paragraph 47 of the complaint. He entered her physical space. He commented on her clothing, her feminine gait. He said he would like to see her, quote, in action off campus. He said she should always make herself, quote, available to her supervisor. You know, whatever inference, you know, can be drawn from these allegations, one inference is that there was a romantic interest here. It sounds sufficiently sexual to permit a claim for now under Rule 12 that there's a quid pro quo claim here. And after she resisted, again, he said, you can be taken out of this program on my recommendation. And. Well, wasn't she, doesn't the complaint allege, she was unwilling to meet with him in the way that the other students met with him. If she had come to the breakfast meeting, she would presumably have been part of the group sessions, and there wouldn't be these one-on-one sessions. Well, that doesn't excuse everything else. Invading her space, making explicitly sexual comments, meeting with her in poorly lit rooms. Excuse me, what are the, yeah, I'm sorry, the explicit sexual comment, what was that? That was a gesture, paragraph 47, stroking a pen as he spoke. It's detailed in the complaint, holding a pen. The question was about explicitly sexual comments. Well, he said he would like to see her in action off campus. What does that mean? That doesn't sound like an educational request. Plaintiff should always make herself, quote, available to a supervisor. This is rule 12, and one inference is that this is a sexual interest. The university's going to say no. There's a neutral reason for this, but this is not summary judgment. And based on the allegations in her complaint, it looks like a quid pro quo claim. We have a retaliation claim here. She complained about Mangano on three separate occasions in emails. And the state does not take issue with whether there's protected activity under the First Amendment under Garcia versus Sunni Buffalo. So we get to the issue of causation. Was she removed from the program because she spoke out on three occasions about, quote, a male professor who's harassing me, weird, inappropriate, creepy behavior? Shortly after she sends these emails, she is told that she is no longer going to be teaching that semester. This is only a few weeks after the semester starts. And then a few weeks after that, she's removed from the program completely. We have circumstantial evidence because of timing. We have direct evidence. But how do you, I mean, assuming that you got over the first hurdle of a prima facie case for this. I mean, how do you respond to the argument that you have not established pretext given that there were neutral, on their face at least, reasons given for her dismissal from the program? Two part answer. First, I don't think we have to set up and then disprove their reasons as pretext in a complaint under Rule 12. But even if we do, she doesn't concede in the complaint that she was not satisfying her obligations as a student teacher. A good deal of the district court's ruling assumes as true the allegations made against her about her student teaching performance, but she doesn't concede that. Well, she does, you have this, the September 29th email, which is conspicuous in its absence of any reference whatsoever to sex or gender. She goes through, she catalogs her complaints about Mangano, and she concedes in there that she had performance issues and tongueness issues. Okay, let me address that. That's page 91 of the record. She doesn't explicitly reference sexual behavior in that email. She doesn't reference it at all. I read the letter. But paragraph 73, she says she sent an email to somebody else, a male professor is harassing me. Now, even if the court doesn't think there's a Title IX claim, it's still protected speech. She doesn't concede, I mean, she concedes she taught two bad lessons. Okay, that's a few weeks after she starts student teaching. Student teachers are not going to teach great lessons every time out. She's not conceding that she deserved to be thrown out of the program. There's going to be bumpy moments for a student teacher when they're just starting out. Beyond that, she doesn't concede anything like the state is suggesting on appeal or in their motion to dismiss that she taught terrible lessons, her lesson plans were lousy. That's their allegations. We can't credit that. Not under Rule 10C, not under Gantt. I mean, we can- She does concede though, except that repeated lateness? I think she said she came in late a couple of times. But that, again, under Rule 12, doesn't justify expelling her from the program when she doesn't otherwise concede all the other terrible things they're saying about her. And on Rule 12, we have to assume that she was still able to proceed with the program. And McGonagall told her, after one of those conversations, that was a good lesson. You're poised to pass your educational exam that's coming up. That's in the complaint. So, that's probably the main issue on this appeal, is to what extent do we credit the allegations about her allegedly poor teaching performance? And under Gantt versus Wallingford, we can't credit everything in those emails if they're written by a supervisor. But she alludes to performance issues in her own email. Right, she's- She doesn't issue, there's not a, this goes on for four single space pages. There's not a single reference. This is the most detailed explanation that I see of her position on this problem. There's not a single mention of sex. But she did- And she concedes, she's late, she concedes. She just refused to come to the meetings with the other members of her student teaching cohort. And, and, but the influence is that this is not enough to throw her out of the program. Of course, a student teacher within the first couple of weeks is going to have difficult moments beyond admitting to two bad lessons. She's not really admitting to behavior that would disqualify her from a career in teaching. But that's not her goal, that's her supervisor's goal. But that might be more appropriate on summary judgment than a rule 12 motion where she doesn't- You don't have, you do not have any real plausible basis for suggesting that any of this, her treatment was on the basis of sex. Well then, it's retaliation based on free speech. She has the right to speak out as she did in these emails, as this court has said in Garcia. And shortly thereafter, she was told, you are going to hurt our relationship with the local school district. That's direct evidence of causation. What you're saying is very troubling, and there's going to be consequences for this. That's- But doesn't it, with regard to the free speech, I mean, it has to be to be protected. It has to be on a matter of public concern, not just personal employment grievance. No, it doesn't. Not under Garcia. Garcia said, and when you're suing SUNY as a student over your speech, it's not a public concern inquiry because you're not an employee of the university. So it's not a public concern problem like we have in most employment cases. And the state doesn't make that argument. They go straight to causation. But I don't think you can decide causation as a matter of law based on the allegations here. She's not conceding that she deserved to be thrown out of the program other than admitting she had two bad lessons. But again, a student teacher's going to have lessons that need improvement. That's why they're student teachers. It was her first semester, she had been teaching two weeks. So based on the allegations in this complaint, we don't have causation. We haven't killed off causation as a matter of law. We have issues of fact as to what was the motive. Was it her teaching or was it her speech? And shortly after she speaks, she's fired and she's told, there are going to be consequences for what you said because of our relationship with this school district. So, I guess I've gone over my time. I can save the due process argument for rebuttal. Thank you. May it please the court, may I? Sure, certainly. Thank you. Mark Rube for the Appellees. The district court correctly concluded that plaintiff's third amended complaint fails to plausibly allege several requisite elements of her Title IX and constitutional claims. Sutton's Title IX claims for discrimination and retaliation both fail for at least two independent reasons. First, Sutton's complaint, its attachments, and the documents quoted therein do not plausibly allege that Sutton put Stoneybrook on notice that she was complaining about sexual harassment. Instead, her complaints described alleged bullying and differential treatment. Second, the complaint fails to plausibly allege a nexus between her dismissal as a student and supposed discriminatory intent. Sutton's conclusory allegations of causation are implausible in light of the pleadings showing that Stoneybrook dismissed her for professional deficiencies. Turning first to the Title IX claims, Sutton must show a causal link between the dismissal and a improper sexual motive. The documents that supposedly provided notice to Stoneybrook are all in the record. There's no allegations about any oral conversation. So the September 29th email that was discussed does not contain any references to discrimination on the basis of sex, and nor do the other correspondence that followed that chain. And I would just also direct the court to the Murray decision, which says general references to harassment, discrimination are not enough. If someone perceives certain conduct as having sexual overtones, there has to be some plausible allegation that they alerted the university of that perception, and that is not in the documents here. The facts also do not raise a plausible inference that she was dismissed for an improper purpose rather than a refusal to complete remedial programs. And I'd just like to emphasize that after the email, the university did not immediately seek her dismissal, but rather asked her to sign a contract that reflects basic professional competencies and complete a remedial assignment. And it was her refusal to complete that assignment that led to her dismissal. And another sort of causal break in the link of the causal chain relates to the procedural arguments as well, that there was a disinterested appeals committee that the dismissal was appealed to, and there's no allegations, period, let alone plausible allegations that the appeals committee had improper or discriminatory purpose. I will... I understand your argument about this is all implied, but Galante understood that this was inappropriate and perhaps based in sex, because the reaction in the email of October 3rd is that the plaintiff was making heavy, quote, heavy accusations about the actions and intentions of her professors. And shortly thereafter, she's reassigned to a female supervisor. So I have a few responses to that. First, the heavy accusations do not necessarily... don't relate to sex, because those could be... those are in the context of the email that preceded it, which talked about bullying and differential treatment. I would also like to emphasize that that email was also in response to an email that having to get fingerprinted for her school district. So it was in response to that email as well, which brings in the response about how she was damaging the relationship with the school district as well. So the fact that the administration saw these as serious accusations does not show that they were accusations that were protected under Title IX. And really, the gravamen... just turning back to the sexual advances, the quid pro quo has to show that it was because of a refusal of sexual advances. The gravamen of the complaint is these text messages that were sent to all members of the student teaching seminar, male and female. And as I mentioned, the other allegations that were referenced by counsel, there was nothing putting Stony Brook on notice that those had... that she perceived those as having sexual connotations. Even with regard to the use of the word creepy in one of the messages to describe the behavior? Uh, yes. I mean, creepy can... especially when read in context of the entire email, the preceding paragraph, which talked about the text messages to both male and female students. So the creepy behavior is not enough to signal a plausibly alleged Title IX protected activity, just as this court has held that a reference to harassment or discrimination without some sort of supporting factual detail is insufficient as well. I'd just like to briefly talk about the remaining... well, just one other thing to say on the First Amendment claim. I'd also just sort of direct this court to the Holmes case, which is a summary order, but that was also a motion to dismiss where judicial notice showed that there was plainly a legitimate basis for the disciplinary... for the dismissal. What do we make of the... your opposing counsel suggests that these determinations about whether or not the reasons for the dismissal were in fact legitimate, that those... that that presents a factual question? Um, I agree that in many cases it would, but this is not one of those cases. This is like Holmes, where they're... the record and the way that the plaintiff has chose to plead this complaint brings into the court's consideration the full context of her email, which acknowledges her performance deficiencies. And I just want to be clear also that, you know, lateness is not a minor consideration for, you know, a professional career, particularly a teacher where you are involved in supervising students. Timeliness is important. And in the Horwitz case, the Supreme Court recognized that for the medical profession, and I think for the legal profession it would be likely recognized as well. Same too for the teaching profession. What about the sort of... the argument that somehow the district court went too far in crediting the truth of all the allegations and the emails that were not integral to the complaint? I mean, there is temporal proximity for the retaliation claim. The first email is on September 29th. By October 13th, she's been dismissed. And we have lots of language and opinions saying at the pleading stage, temporal proximity by itself could be sufficient. Okay, I'll address... I think those are two separate questions. So I'll address first the issue of the supposed crediting of documents. And that is not what the district court did. It did not credit any of the documents, but it read the plausibility of the allegations in the complaint in light of the documents that were quoted or incorporated by reference into the complaint. So the court need not accept allegations that are inconsistent with the documents that were incorporated into the complaint. And as to your second question, which was about... Oh, temporal proximity. Yes. Temporal proximity, yes, in many cases, that alone is enough. But here, there's sort of two circumstances that I referenced that are cut off that sort of chain of events that you were talking about. One is that the university did not immediately seek her dismissal, as I mentioned before, but gave her an opportunity to remediate her deficiencies. And she refused that program. And Garcia says if there's some reasonable alternative, then the causation fails. And there's no real plausible allegation that this remedial program is not reasonable. And then the other event also is the appeals committee, which had no notice of any of the supposed improper motives, at least according to the allegation in the complaint. I think I am over time now. So unless there's any other questions, I will rest on a briefing and ask that you affirm. Thank you. We just heard there's no causal link between sexual motive and dismissal. But as I mentioned a few minutes ago, Mangano told her she was about to pass her teaching exam, which suggests she's a good teacher and she taught a good lesson, but that he had enough of your behavior and you can be taken out of the program on my recommendation. And next thing you know, she is essentially taken out of the program. We can't assume that the contract that they wanted her to sign was a good faith gesture, not on the allegations in this complaint, if she's asserting that she didn't deserve to be thrown out and that the contract was sort of an ad hoc, soo generous maneuver by the district, by the college. This is not summary judgment. We can't assume, you know, in certain circumstances, maybe it's appropriate to have somebody sign a contract, but we're not conceding that here. And the disinterested appeals committee, that's really part of the due process argument. She was not given notice of anything, the due process. We have a threshold issue on due process. Was this a disciplinary dismissal? Was it an academic dismissal? If it's disciplinary, she has greater due process rights. This is much closer to a disciplinary dismissal based on the allegations in the complaint, because she's claiming it's retaliatory and has nothing to do with her teaching. If it's a disciplinary dismissal, she's entitled to notice and opportunity to be heard. The complaint goes into detail about how she was not even told that the appeals committee was meeting. She was denied documents relevant to her defense. She didn't receive any formal signed letter telling her that she was about to lose her status as a student teacher. If we accept for purposes of the complaint that this is a disciplinary dismissal, she did not get the due process that courts have said a student deserves under the due process clause. And I cited a district court case, because there's very few cases on this issue,  Horowitz Supreme Court case. Even if the court doesn't think there's a retaliation claim, considering the lack of notice about lack of written notice, lack of opportunity to be heard before the committees and the so-called disciplinary disinterested committee, she was not given process to defend herself. And they're relying... I'm sorry, could you explain to me what aspects of the allegation support that it was a disciplinary dismissal? Because I mean, the school's... I mean, I'm sure you'll take issue with that. But the school is talking about her performance, and what's in the email seems to relate to academic performance. Because if we accept that it's not based on performance, based on her not conceding that she was a bad student teacher, then it has to be disciplinary because it's in response to her complaint. It's closer to disciplinary than academic. I mean, it's not as if they accuse her of doing something wrong, that was apart from academics. But if it's a retaliatory dismissal, then it sounds more disciplinary to me than academic. And if it's disciplinary, and she didn't get any of the due process protections that the cases require, and the due process issues are detailed in the complaint, then she was essentially dismissed from the program without an opportunity to be heard under the due process clause. And since she disputes everything they're saying... But you have to assume then from the way that you're describing it, we have to assume that this was a retaliatory dismissal. And then, of course, I mean, don't we have to first decide based on just the facts? What about these facts, aside from the conclusion that it's retaliatory, suggest that this is disciplinary? Because it's based on her objections to Mangano's bullying behavior. So... That's not true. It's based on a constellation of factors, including criticism of her performance in a school program. But she says after a couple of weeks of teaching, it wasn't sufficiently awful to have her thrown out. Mangano told her, you just taught a good lesson, you're poised to pass your teaching exam. He said that to her in September. But you know, her supervisor made judgments about her professional performance. And unruled... And they weren't entirely favorable to her. And the supervisor and the other officials at Stony Brook gave her a remedial program, which she rejected. And she was ultimately asked to leave the program. So how do we address then Mangano's telling Sutton, at some point you taught a good lesson, you're going to pass your teaching exam. That tells her you're a good teacher, but you're not ignoring me, and you're essentially rejecting my advances. That's the inference we can draw on the complaint. That takes the case out of the allegation that she's a bad teacher. And there's something else going on here. This is not summary judgment. She's not conceding this under oath. You know, I don't think we can say, based on the face of this complaint, that she's conceding that she deserved to be thrown out of the program and that the contract they wanted her to sign was a good faith gesture. We can't forget, we draw all the inferences in her favor on the basis of what's in the complaint and conceding that she had two bad lessons. You know, discovery may very well show that that's not enough, based on whatever standards exist at Stony Brook, to throw somebody out of the program. Thank you. Thank you. We'll take the matter under advisement.